**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

                            :

    v.                        **Case No. 2:25-cr-169
                                    Chief Judge Sarah D. Morrison**

TOLLIVER CUNNINGHAM,      :

      Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Tolliver Cunningham's Motion to Suppress Evidence Obtained from Warrantless Vehicle Search. (Mot., ECF No. 28.) The Government responded (Resp., ECF No. 29), and Mr. Tolliver replied (Reply, ECF No. 37). For the reasons below, the Motion is **DENIED**.

## I.    BACKGROUND

On September 25, 2025, detectives with the Franklin County Sheriff's Office Special Investigations Unit saw a Jeep Grand Cherokee parked at a Columbus, Ohio, gas station "known for drug trafficking and high crime." (ECF No. 29-1, PAGEID # 80.) The detectives saw a man "approach the driver's side of the Jeep, reach into the Jeep window, then walk away." (*Id*.) Based on their training and experience, the detectives believed this conduct was "indicative of an illegal narcotics transaction." (*Id*.) The Jeep's driver was later identified as Mr. Cunningham. (*Id*.)

The detectives (who were in plain clothes) followed Mr. Cunningham's Jeep out of the gas station until marked cruisers were positioned behind it. (*Id.*) While driving behind the Jeep, Deputy Wood remarked over the radio that Mr. Cunningham was "moving around, eyeballing the mirror pretty hard." (Wood BWC, 17:13:30.[1]) Deputy Wood then saw the Jeep commit a traffic infraction (turning without a signal) and initiated a traffic stop. (*Id.*, 17:13:45.)

Deputy Wood exited his cruiser and approached the Jeep. (Wood BWC, 17:14:00.) He quickly learned that Mr. Cunningham's license had been suspended. (*Id.*, 17:14:20.) Deputy Wood then said to Mr. Cunningham, "You're just gonna step on out. The worst thing you're looking at is like a ticket. I'm gonna let her [Mr. Cunningham's passenger] have the car, OK?" (*Id.*, 17:14:40.) Deputy Wood took Mr. Cunningham's ID card to his cruiser and began to run checks. (*Id.*, 17:14:55–17:15:40.) After Mr. Cunningham got out of the Jeep, another Deputy patted him down and found a large amount of cash. (*Id.*) Deputy Wood then got out of his cruiser and asked Mr. Cunningham for consent to search the Jeep; Mr. Cunningham denied. (*Id.*, 17:15:55.) Deputy Wood informed Mr. Cunningham that he had a narcotics detection dog that he intended to "run around the car real quick." (*Id.*, 17:15:50.) He asked whether the dog would indicate on any narcotics in the Jeep; Mr. Cunningham's response is inaudible. (*Id.*, 17:16:05.) Deputy Wood then directed Deputy Dillon to prepare the drug detection canine.

---

[1] Body-worn camera footage was manually filed with the Court. (*See* ECF No. 31.) Time-stamps are approximate.

For the next minute, the evidence requires attention in two places at once.

*Deputy Wood's Cruiser*. Deputy Wood returned to his cruiser and said over the radio, "He denied consent but he's got a boat load of money on him." (Wood BWC, 17:16:29.) For the next forty-eight seconds, Deputy Wood's body-worn camera shows that he is holding Mr. Cunningham's ID card; typing can be heard in the background, and Deputy Wood informs via radio that the "canine indicated." (*Id.*, 17:17:17.)

*The Canine Sniff*. Deputy Dillon walked to his cruiser (parked behind Deputy Wood's) and retrieved his canine partner, Ivan. (Dillon BWC, 17:16:22.) Ivan approached the Jeep on-leash. (*Id.*, 17:16:50.) Deputy Dillon first signaled to the driver's side door. (*Id.*, 17:16:57.) Ivan jumped onto the door and sniffed at the half-open window. (*Id.*) He pawed the door before landing back on the ground and stood at the door, even while Deputy Dillon continued to the back of the car. (*Id.*, 17:17:00.) Deputy Dillon then said, "Go home," and Ivan returned to his side. (*Id.*, 17:17:01.) Deputy Dillon praised Ivan and kept going around the vehicle before signaling for Ivan to sniff the passenger's side door and continuing to give verbal praise. (*Id.*, 17:17:06.) Deputy Dillon and Ivan left the Jeep and went back to the cruiser; Ivan jumped in and Deputy Dillon unclipped the leash. (*Id.*, 17:17:33.)

Deputy Dillon then returned to the Jeep and opened the driver's side door. He said to another Deputy, "Yeah, he [Ivan] was clawing at this door. There's a backpack right here." (*Id.*, 17:17:03.) Deputy Dillon opened the backpack and pulled out a digital scale, a large plastic bag filled with a leafy green substance, and small

3

plastic baggies. (*Id.*, 17:18:18.) The Deputies searched the rest of the vehicle and found two handguns. (*Id.*, 17:25:05; *see also* ECF No. 29-1, PAGEID # 81.)

Mr. Cunningham was indicted on one count of being a felon in possession of a firearm. (ECF No. 13.) He now argues that the Deputies lacked reasonable suspicion to conduct a canine sniff and improperly extended the time of the traffic stop to conduct a narcotics investigation, such that all evidence recovered from the search should be suppressed. (Mot., *generally*.)

## II.    MOTION FOR AN EVIDENTIARY HEARING

Mr. Cunningham requests an evidentiary hearing to evaluate "whether Ivan gave a trained final indication" and whether Deputy Dillon's "contact with the vehicle influenced the dog's behavior[.]" (Mot., PAGEID # 69; Reply, PAGEID # 95.) "An evidentiary hearing is required only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) (internal quotation and citation omitted). Here, Mr. Cunningham offers no definite, specific, detailed, or non-conjectural reason to suspect that Deputy Dillon influenced Ivan's behavior.

As to Ivan's indication, Mr. Cunningham argues that "[p]awing at the window is not documented as [Ivan's] trained final response." (Reply, PAGEID # 94.) Instead, he asserts (based on a single October 2023 training log) that Ivan's "trained final indication is a passive sit." (*Id.*) But that training log also reflects Ivan indicating by "laying at the bottom of [a] door with his nose stuck to the seam[,]" "clawing at [a] door and [giving] a final indication of sitting[,]" and "barking

4

[at a] door[.]" (ECF No. 37-1, PAGEID # 97.) The training log does not undermine Deputy Dillon's conclusion that Ivan alerted to the Jeep's driver's side door. Mr. Cunningham's request for an evidentiary hearing is **DENIED**.

## III.   MOTION TO SUPPRESS

The Fourth Amendment protects the "right of the people to be secure . . . against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. Mr. Cunningham argues that his vehicle was subject to an unreasonable search and moves to suppress all evidence recovered. (Mot.) He makes three arguments: (1) the Deputies unlawfully deviated from the initial purpose of the stop, without reasonable suspicion, to deploy Ivan around the vehicle; (2) the Deputies lacked reasonable suspicion to deploy Ivan; and (3) Ivan has not been shown to be a reliable narcotics detection dog. (*Id*.) None of these arguments is availing.

*Deviation from purpose*. "A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). "Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.'" *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (citing *United States v. Sharpe*, 470 U.S. 675, 684 (1985)). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id*. A canine sniff conducted during an otherwise lawful traffic stop will render the seizure "unlawful only if it unreasonably prolongs the initial stop and the officer lacked an independent reasonable suspicion to extend the stop." *United States v. Stepp*, 680 F.3d 651, 663 (6th Cir. 2012) (citation omitted).

Mr. Cunningham argues that the canine sniff "added time to the stop" and that the Deputies "were not engaged in traffic related activity" while waiting for Ivan to deploy. (Mot., PAGEID # 67.) The body-worn camera footage shows otherwise. After Deputy Wood informed Mr. Cunningham that he was going to use a canine, he returned to his cruiser to continue his work. Deputy Wood can be seen holding Mr. Cunningham's ID card and can be heard typing and speaking into the radio. In other words, Deputy Wood was "reasonably diligent in pursuing" the work attendant to a traffic stop that would result in a ticket. *Stepp*, 680 F.3d at 664; *see also Rodriguez*, 575 U.S. at 349 ("[A]n officer's mission during a traffic stop typically includes checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."). The stop was not unreasonably extended.

*Independent reasonable suspicion*. Mr. Cunningham next argues that the Deputies lacked independent reasonable suspicion to deploy Ivan. (Mot., PAGEID # 67.) "Generally, a dog sniff does not require separate reasonable suspicion because it is not a search under the Fourth Amendment." *Stepp*, 680 F.3d at 663 (citing *Illinois v. Caballes*, 543 U.S. 405, 409 (2005)). Even still, the Deputies had reasonable suspicion to pursue their narcotics investigation. The Sixth Circuit has explained that "[r]easonable suspicion exists when, based on the totality of the circumstances, a police officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Bey v. Falk*, 946 F.3d 304, 313 (6th Cir. 2019) (quoting *United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011)).

6

Although an officer's "inchoate and unparticularized suspicion[s]" are not to be given weight, courts should consider "the specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Here, the Deputies' plain-clothes colleagues observed Mr. Cunningham's Jeep engaged in activity indicative of drug trafficking in a high crime location. When Deputy Wood pulled behind the Jeep, Mr. Cunningham was "eyeballing the mirror." And when a Deputy patted him down, they found a large amount of cash in Mr. Cunningham's pocket. Considered in their totality, these circumstances provided the Deputies with reasonable suspicion to investigate possible criminal activity.

*Reliability of K-9*. Finally, Mr. Cunningham argues that the Government has not proven that Ivan's alert gave the Deputies probable cause to search. "If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Florida v. Harris*, 568 U.S. 237, 246–47 (2013). The Government offers evidence that Deputy Dillon and Ivan completed the Ohio Peace Officer Training Commission's Special Purpose and Patrol Related Canine Unit Evaluations on March 25, 2025. (*See* ECF No. 29-2.) Mr. Cunningham offers nothing to rebut the Government's evidence.

The Motion to Suppress (ECF No. 28) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

7